1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

DENNIS S. GRENNAN,

11

Plaintiff,

CASE NO. C05-1504-JCC

12

v.

ORDER

13

CROWLEY MARINE SERVICES, INC.,

14

Defendant.

15

        This matter comes before the Court on Defendant's motion for summary judgment (Dkt. No. 9)

16

("Def.'s Mot."), Plaintiff's Opposition thereto (Dk. No. 15) ("Pl.'s Opp'n), and Defendant's Reply (Dkt.

17

No. 19) ("Def.'s Reply").  The Court has considered the briefs, declarations, and exhibits submitted by

18

the parties and has determined that oral argument is not necessary.  For the reasons that follow, the Court

19

GRANTS Defendant's motion for summary judgment.

20

**I.     BACKGROUND**

21

        In the summer of 2002, Defendant Crowley Marine Services undertook to transport and deliver

22

cargo on four barges to Chayvo Beach on Sakhalin Island, near Russia's Pacific Coast (the "Chayvo

23

site").  Under the terms of its delivery contract, Defendant was responsible for both transporting and

24

offloading the cargo.  To carry out this task, Defendant established "two separate lines of

25

26

ORDER – 1

1   command"—one for vessel operations and one for cargo operations—both of which were under the

2   direct supervision of Defendant's employees.  (Def.'s Mot. 3.)  Captain Al Anderson ("Anderson"), a

3   Crowley employee of twenty-one-years, was in command of vessel operations.  James Van der Veen

4   ("Van der Veen"), a twenty-seven year employee of Crowley, was in charge of cargo operations.  Harley

5   Mangold ("Mangold"), a Crowley employee of thirty-eight years, acted as on-site manager of cargo

6   operations.  Plaintiff Dennis S. Grennan was employed by Defendant on two of its barges.

7          As predicted in a weather study Defendant conducted prior to delivering the cargo, weather

8   conditions and water depths had produced sea states of approximately five to six feet at the Chayvo site.

9   Because the Chayvo site lacked a permanent dock, Defendant was required to anchor one of its barges at

10  a beach at the Chayvo site and assemble a ramp from the barge to the shore in order to transport its

11  cargo.  Defendant used this "beach barge" as a temporary dock for the remaining three barges for

12  purposes of unloading their cargo.  In order to move cargo from the remaining barges to the beach barge,

13  Defendant had purchased a large ramp to be used in connecting the offloading barge to the beach barge.

14  Anderson, Van der Veen, and Mangold were all responsible for selecting this ramp.  (Pl.'s Opp'n 7.)

15         During the course of positioning the crane in preparation for offloading onto the beach barge,

16  vertical movement in the ramp caused by the active sea states caused Plaintiff's right foot to be caught

17  beneath the ramp.  The great weight of the ramp crushed his foot, and he was transported back to land

18  where he underwent treatment for the injury.  After receiving the statutorily enumerated benefits for

19  longshoremen injured in the scope of their employment under the Longshore & Harbor Workers'

20  Compensation Act, 33 U.S.C. § 901, Plaintiff brought this third-party negligence action against

21  Defendant Crowley in its capacity as vessel owner, pursuant to 33 U.S.C. § 905(b).

22  **II.     ANALYSIS**

23         **A.     Summary Judgment Standard**

24         Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories,

25  and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any

26  ORDER – 2

1   material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P.

2   56(c). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact-

3   finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In

4   determining whether an issue of fact exists, the court must view all evidence in the light most favorable to

5   the non-moving party and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at

6   248–50. In order to defeat a motion for summary judgment, the non-moving party must make more than

7   conclusory allegations, speculations, or argumentative assertions that material facts are in dispute. *Wallis*

8   *v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

9        **B.**     **Statutory Framework**

10           **1.**     **Causes of Action Against Vessel Owners**

11       The Longshore & Harbor Workers' Compensation Act ("LHWCA") is a comprehensive workers'

12   compensation system under which employers are required to compensate covered employees injured in

13   the course of their employment regardless of fault. *See* 33 U.S.C. § 905(a). The LHWCA's statutory,

14   no-fault compensation payments are the employer's exclusive liability to its employees when they are

15   injured in the course of their employment. *Id.* Employees may not maintain an action in tort against their

16   employers.

17       In addition to the entitlement of no-fault workers' compensation, the Act also permits injured

18   longshoremen and harbor workers to sue negligent third parties in tort. *Id.* ("If . . . the person entitled to

19   . . . compensation determines that some other person other than the employer . . . is liable in damages, he

20   need not elect whether to receive such compensation or to recover damages against such third person.").

21   In particular, § 905(b) expressly enables certain covered employees to bring an action against a vessel as

22   a third party if their employment injury was caused by the negligence of the vessel.[1] It is this language

23

---

24       [1] The LHWCA defines the term "vessel" as "any vessel upon which or in connection with which
any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of
25   his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat

26   ORDER – 3

1    which has since given rise to the so-called "dual-capacity" employer, who acts both as a vessel owner and

2    its own stevedore.

3           The typical situation, as suggested by the U.S. Supreme Court, is a "tripartite" relationship

4    involving an employee, an independent employer, and the third-party vessel owner. *See Jones &*

5    *Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 528 (1983) ("Most longshoremen who load and unload

6    ships are employed by independent stevedores, who have contracted with the vessel owners to provide

7    such services."). In the typical tripartite relationship, only the vessel owner may be sued in tort under

8    § 905(b), while the employer is shielded from such liability, whereas the dual-capacity employer situation

9    involves only two entities—employee and employer/vessel owner. However, the fact that an entity may

10   act as both employer and vessel owner does not preclude a cause of action in tort against the entity as

11   vessel owner; dual-capacity employers can be held liable in tort for negligence arising from their negligent

12   actions as vessel owners.

13          Congress has amended the provisions of the LHWCA to refine the contours of a longshoreman's

14   cause of action against a dual-capacity employer. *See Gravatt v. City of New York*, 226 F.3d 108,

15   115–20 (2d Cir. 2000) (discussing statutory framework of and subsequent amendments to the LHWCA).

16   First, in 1972, Congress amended § 905(b) to provide, in relevant part, that "no [third-party action

17   against the vessel] shall be permitted if the injury was caused by the negligence of persons engaged in

18   providing stevedoring services to the vessel." *Id.* at 116. As *Gravatt* noted, by including this language,

19   Congress intended that the "vessel's liability is to be based on *its own negligence*." *Id.* at 117. In

20   addition, a longshoreman-employee's right to recover for unseaworthiness was abolished. *Id.* Second, in

21   1984, Congress amended the LHWCA to specifically remove a cause of action in negligence for workers

22

23   ───────────────────

24   charterer, master, officer, or crew member." 33 U.S.C. § 902(21). There is no dispute that Defendant is
     an owner of the vessel in the present case, thus bringing it within the third-party negligence exception
     under § 905(b).

25

26   ORDER – 4

1   engaged in shipbuilding, repairing, or breaking services, but specifically omitted reference to

2   longshoremen, suggesting that Congress chose not to preclude a longshoreman's cause of action in tort

3   against a dual-capacity employer. *Id.* at 119.

4         The language in the LHWCA indicates that while an employer can sue a dual-capacity vessel

5   owner for negligence, the dual-capacity vessel owner only can be held liable for negligence attributable to

6   it in its vessel capacity, not its employer capacity. *See also Jones & Laughlin*, 462 U.S. at 531 n.6 ("Of

7   course, § [90]5(b) does make it clear that a vessel owner acting as its own stevedore is liable only for

8   negligence in its 'owner' capacity, not for negligence in its 'stevedore' capacity."). Holding a vessel

9   owner liable as employer in a third-party tort action would effectively undermine the employer's

10  entitlement to exclusive liability under the LHWCA. Accordingly, "when an employer acts in a dual-

11  capacity as vessel owner, the entity retains its immunity for acts taken in its capacity as an employer, but

12  may still be sued 'qua vessel' for acts of vessel negligence." *Levene v. Pintail Enter., Inc.*, 943 F.2d 528,

13  531 (5th Cir. 1991) (citing *Jones & Laughlin*, 462 U.S. at 532).

14         **2.    *Scindia* Duties**

15        Outside the context of the dual-capacity employer, the U.S. Supreme Court has articulated three

16  duties that define the scope of a vessel owner's duty of care in the classic tripartite situation. First, the

17  "turnover duty" requires the vessel owner to exercise "ordinary care" under the circumstances "to have

18  the ship and its equipment in such condition that an expert and experienced stevedore will be able, by the

19  exercise of reasonable care, to carry on its cargo operations with reasonable safety." *Gravatt*, 226 F.3d

20  at 120–21 (citing *Scindia Steam Navigation v. De Los Santos*, 451 U.S. 156, 167 (1981)). This duty

21  includes warning the stevedore of hidden dangers that a stevedore exercising reasonable care could not

22  discover. *Gravatt*, 226 F.3d at 121. Second, once stevedoring operations begin, a vessel is liable where

23  it has "actively involved" itself in the stevedoring operations and negligently injures a longshoreman, or if

24  it "fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in

25  areas, or from equipment, under the *active control of the vessel* during the stevedoring operation." *Id.*

26  ORDER – 5

1  Third, a vessel has an "intervention" duty with respect to obvious dangers in areas under the principal

2  control of the stevedore where it "acquires actual knowledge that (1) a condition of the vessel or its

3  equipment poses an unreasonable risk of harm, and (2) the stevedore is not exercising reasonable care to

4  protect its employees from that risk." *Id.* at 121.

5  **3.    Application of *Scindia* Duties in the Dual-Capacity Context**

6  The U.S. Supreme Court has not addressed the question of how to define a dual-capacity

7  defendant's negligence in its role as a vessel owner (which is actionable negligence) in a manner that

8  distinguishes it from negligence in its role as an employer that has contracted for stevedoring services.

9  *Id.*; *see also Morehead v. Atkinson-Kiewit J/V*, 97 F.3d 603, 611 (1st Cir. 1996) (en banc) (noting that

10 the Supreme Court has said "little" about dual-capacity cases).  Nor has the Ninth Circuit addressed the

11 proper analytical approach for its courts to follow in distinguishing vessel-owner negligence from

12 employer negligence in cases involving dual-capacity defendants.

13 The circuit courts of appeals that have dealt with this issue have concluded that a dual-capacity

14 employer can be held liable under § 905(b) only to the extent that it breached its *Scindia* duties of care

15 *while acting in its capacity as vessel. Gravatt*, 226 F.3d at 123 (emphasis added); *see also Morehead*, 97

16 F.3d at 613; *Castrona v. Lykes Bros. S.S. Co.*, 758 F.2d 1025, 1033 (5th Cir. 1985); *Smith v. E.*

17 *Seaboard Pile Driving*, 604 F.2d 789, 795 (2d Cir. 1979).   In effect, these courts have crafted a

18 "modified" application of *Scindia* to the dual-employer context, which requires that courts identify

19 whether the dual-capacity owner was acting as vessel *before* conducting an analysis of the *Scindia* duties.

20 Under this approach, the key issue becomes whether the shipowner's employees who were at fault

21 committed the negligent acts "in their capacity as agents of the vessel on the one hand, or as employees

22 performing longshoring . . . services on the other." *Gravatt*, 226 F.3d at 125.  As both the *Morehead* and

23 *Gravatt* courts noted, the task of a court reviewing the alleged negligence of a dual-capacity vessel owner

24 is to "analyze the allegedly negligent conduct to determine whether that conduct was performed in the

25 course of the operation of the owner's vessel as a vessel or whether the conduct was performed in

26 ORDER – 6

1    furtherance of the employer's [stevedoring] operations." *Gravatt*, 226 F.3d at 125; *see Morehead*, 97

2    F.3d at 613.  Having had the benefit of *Gravatt*'s and *Morehead*'s thoughtful and careful analysis on the

3    issue of distinguishing vessel from employer negligence, the Court adopts the analysis applied in those

4    cases as the proper method to distinguish between vessel and employer negligence in the present case.

5              **C.      Analysis of Defendant as a Dual-Capacity Stevedore**

6              Proceeding under the guidance in *Gravatt* and *Morehead*, the first step in the analysis is to

7    identify the alleged negligent conduct.  The Court then must determine whether that alleged negligent

8    conduct was performed in the course of Defendant's operations as a vessel or in furtherance of

9    Defendant's stevedoring operation.  The question is thus whether Defendant was acting in its role as

10   "vessel owner" or "stevedore." *Gravatt*, 226 F.3d at 124–25.  If the conduct was as vessel owner, the

11   analysis then shifts to whether defendant breached a vessel owner duty.

12             Plaintiff attempts to show the existence of a genuine issue of material fact by taking an approach

13   opposite to that required under *Gravatt* and *Morehead*, attempting to use the *Scindia* duties as a proxy to

14   determine whether Defendant was acting in its capacity as vessel owner by focusing upon alleged

15   breaches of the *Scindia* duties.  However, the Court need not address Plaintiff's arguments about breach

16   of vessel-owner duties because it finds that the evidence on the record is insufficient as a matter of law to

17   create a genuine issue of material fact as to whether Defendant was even acting in its capacity as vessel

18   owner.[2]  In order for *any* of the *Scindia* duties to apply, a dual-capacity employer must first be found to

19   have acted in its capacity as vessel. *Gravatt*, 226 F.3d at 123.  *Gravatt* makes clear, however, that

20   because the *Scindia* duties were developed outside the context of the tripartite relationship—a

21   relationship between the employee, independent employer, and vessel—a straightforward application of

22

23

24         [2]  Because the Court finds that Defendant's alleged negligence occurred only in its capacity as
     stevedore, there is no need for the Court to address the parties' dispute with respect to the admissibility
     of the expert testimony of Richard Gleason, Samuel Windsor, and Brad McFarlane because these
25   opinions are only relevant as to whether Defendant breached any of the *Scindia* duties.

26   ORDER – 7

1  the *Scindia* duties to the dual-capacity employer "cannot fully serve as the test for the negligence of a

2  dual-capacity defendant in its vessel capacity" without undermining Congress's intent not to premise the

3  availability of a third-party negligence action on whether the vessel is owned by a third-party or by the

4  employer. *See Gravatt*, 226 F.3d at 123.

5      The Court finds that the acts alleged here were, as a matter of law, stevedore capacity acts.  While

6  there may be ample evidence to support an argument that Defendant acted negligently in its capacity as

7  stevedore, the alleged conduct was undertaken only in pursuance of the defendant's role as employer, not

8  as vessel owner.  Van der Veen's responsibility with respect to the Chayvo Beach operation was to plan

9  the loading and discharge of cargo—Defendant's stevedoring operation.   In accordance with this

10 responsibility, he, along with Mangold and Anderson, selected the type of ramp to be used to transport

11 cargo between barges at the Chayvo site—determinations going uniquely to Defendant's stevedoring

12 operation. *See, e.g., Morehead*, 97 F.3d 603.  The finding that decisions with respect to the use of the

13 ramp in the present case are uniquely stevedoring functions is supported by the analysis in *Morehead*.  In

14 *Morehead*, a plaintiff-carpenter, who had been hired on a bridge construction project, brought suit

15 against his dual-capacity employer for injuries he sustained after stepping into a hatch that had been

16 negligently left open on the barge chartered by his employer.   The court considered whether the

17 negligent conduct was attributable to the defendant in its owner or employer capacity and ultimately held

18 that the conduct had occurred only in the defendant's capacity as employer because the hatch had been

19 opened in furtherance of the defendant's operations as a bridge builder. *Id.* at 615.  Much in the same

20 way that the opening of the hatch in *Morehead* was associated with and occurred in furtherance of the

21 bridge construction project, in the present case, the identification and selection of the ramp to be used to

22 offload cargo from barges to the beach barge was uniquely a function of Defendant's stevedoring

23 operation at the Chayvo site.

24     Plaintiff attempts to cast Defendant's negligence as vessel-owner negligence rather than stevedore

25 negligence by emphasizing the role of one vessel employee in making a decision for Defendant as

26 ORDER – 8

1   stevedore.  Specifically, Plaintiff argues that Anderson was a vessel employee assigned to the Marine

2   Operations line of command who participated in the process of selecting the ramp used to transfer cargo,

3   and was aware of its attendant risks.  While Defendant was responsible for selecting and purchasing the

4   ramp that caused Plaintiff's injuries, Plaintiff has not provided sufficient evidence to create a genuine

5   issue of material fact as to how Defendant was acting in its capacity as a vessel owner and in furtherance

6   of vessel-related duties, where Anderson was making a decision uniquely tied to and in furtherance of

7   Defendant's stevedoring operation.  If Plaintiff's arguments are taken to their logical conclusion, the

8   Court would in effect be recognizing that a dual-capacity vessel owner can always be subject to imputed

9   knowledge because of its stevedore capacity.  Plaintiff's arguments thus implicate the precise concerns

10  that prompted both the *Gravatt* and *Morehead* courts to retreat from a straightforward application of the

11  *Scindia* duties to a dual-capacity stevedore, because such an analysis would necessarily undermine the

12  exclusivity of the LHWCA's statutory compensation scheme as to employers.  *See Gravatt*, 226 F.3d at

13  123 ("Where the contracted service is performed by employees of the entity that owns the vessel, *by*

14  *definition* the vessel owner would have 'actively involved' itself in the operation and would have 'actual

15  knowledge' of the failure of the personnel undertaking the task to operate in a manner that protected

16  their coworkers from danger.") (emphasis added); *Morehouse*, 97 F.3d at 615 ("An [improper] expansion

17  of liability would follow from too easily assigning any knowledge acquired by [defendant's] employees . .

18  . to [defendant] in a vessel capacity.").   The focus must remain on distinguishing the role of Defendant as

19  vessel owner from its role as stevedore, not the title of the individual decisionmakers.

20        Plaintiff's attempt to characterize the ramp as part of the vessel's equipment—in hopes of placing

21  the alleged negligent conduct with respect to the ramp under the ambit of conduct undertaken in

22  pursuance of the Defendant's role as vessel owner—is unpersuasive as well.  The ramp at issue in the

23  present case had only recently been purchased for use at the Chayvo site, and was selected and purchased

24  by Defendant in its stevedore capacity.  It was not permanently affixed to the barge and cannot be labeled

25  part of the barge's "regular equipment." *See Law v. Sea Drilling Corp.*, 510 F.2d 242, 248 n.17 (5th Cir.

26  ORDER – 9

1   1975) (ramp supported unseaworthiness claim where it was part of the ship's "regular equipment"); *see*

2   *also De Los Santos v. Scindia Steam Navigation Co.*, 598 F.2d 480, 482 (9th Cir. 1979) (winch was part

3   of a ship because it was attached to the ship's gear); *cf. Drachenberg v. Canal Barge Co., Inc.*, 571 F.2d

4   912, 921 (5th Cir. 1978) (dockside marine loading arm that was "firmly and physically attached to the

5   vessel" was an appurtenance thereof).  The mere fact that the ramp included gangways for potential

6   ingress and egress to and from the barge, where the ramp is not a permanent fixture of the vessel, nor the

7   only source of ingress and egress, does not change this analysis.  *See Sea Drilling Corp.*, 510 F.2d at 248

8   n.17 (sole ramp system was "essential unloading apparatus" to be used by the crew "in service of the

9   ship").[3]

10      The undisputed evidence demonstrates that Defendant's alleged negligence occurred in its

11  capacity as stevedore, not vessel owner.  Accordingly, § 905(b) precludes Plaintiff's suit against

12  Defendant in its capacity as vessel owner.

13  **III.    CONCLUSION**

14      For these reasons, the Court hereby GRANTS Defendant's motion for summary judgment.

15  Because no claims remain, the Court DISMISSES this action.

16      SO ORDERED this 10th day of March, 2006.

17

18                                              John C. Coughenour
                                                United States District Judge
19

20

21      [3]  In any event, even if the Court were to credit Plaintiff's arguments that the ramp at issue
22  became vessel equipment because crew members had used the ramp's gangways while in furtherance of
    vessel operations (Pl.'s Opp'n 19), the Court notes that the effect of permitting Plaintiff to proceed on a
23  theory that the ramp was part of the ship's equipment is to shape much of Plaintiff's allegations into one
    for unseaworthiness, a cause of action *specifically eliminated* under the 1972 Amendments to the
24  LHWCA.  *Gravatt*, 226 F.3d at 116; *see also McGroder v. Moore-McCormack Lines, Inc.*, 299 F. Supp.
    1233, 1236 (E.D. Pa. 1969) (ramp that was not fit for its intended purpose was sufficient to sustain a
25  claim for vessel unseaworthiness).

26  ORDER – 10